Filed 2/26/14  Vallejo v. Capital One CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| EDWARD VALLEJO,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CAPITAL ONE, N.A., et al.,<br><br>    Defendants and Respondents. | B248674<br><br>(Los Angeles County<br>Super. Ct. No. EC056411) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Laura A. Matz, Judge.  Affirmed.

The Chang Firm and Randy Chang for Plaintiff and Appellant.

Doll Amir & Eley, Hunter R. Eley and Amy I. Borlund for Defendants and Respondents.

## INTRODUCTION

Plaintiff Edward Vallejo contends the trial court abused its discretion in sustaining without leave to amend a demurrer to the claims arising out of the allegedly wrongful foreclosure of his home.  The respondents in this appeal include defendant Capital One, N.A. (Capital One), for itself, and as successor by merger to defendant Chevy Chase Bank, FSB (Chevy Chase Bank) (the original trustee on the deed of trust at issue here).  Additional respondents include Chevy Chase Mortgage Company (Chevy Chase Mortgage), formerly known as B.F. Saul Mortgage Company (B.F. Saul) (the lender under the deed of trust and a subsidiary of Chevy Chase Bank), and Mortgage Electronic Registration Systems, Inc. (MERS) (the nominee for the lender under the deed of trust).[1]

Vallejo contends on appeal that the trial court erred in sustaining respondents' demurrer without leave to amend because he stated valid claims for breach of contract, promissory estoppel, implied covenant of good faith and fair dealing, and unfair business practices.  As we explain, we find no error and therefore affirm the judgment of dismissal.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Procedural History of the Present Lawsuit

Plaintiff Edward Vallejo filed the present action in July 2011, alleging causes of action arising out of the nonjudicial foreclosure of Vallejo's home.  Respondents demurred to all causes of action, and the trial court sustained the demurrer with leave to amend.  Vallejo twice amended his complaint, and the trial court sustained demurrers to the first and second amended complaints, with leave to amend.

---

[1]    We primarily refer collectively to all defendants as "respondents."  When necessary, we refer to Chevy Chase Bank, Chevy Chase Mortgage, B.F. Saul, and MERS collectively as the "Chevy Chase respondents" in order to distinguish the Chevy Chase respondents from Capital One.

Vallejo filed the operative third amended complaint on September 4, 2012. It asserted causes of action for: (1) wrongful foreclosure, (2) quiet title, (3) declaratory relief, (4) cancellation of trustee's deed upon sale, (5) breach of the implied covenant of good faith and fair dealing, and (6) unfair business practices in violation of Business and Professions Code section 17200 et seq. Respondents again demurred to all causes of action. The trial court sustained the demurrer in its entirety, this time without leave to amend.

## II.    The Third Amended Complaint

### A.    Facts Alleged

The facts, which we assume to be true for the purpose of evaluating the demurrer, are taken from the allegations of the third amended complaint. (*Wolkowitz v. Redland Ins. Co.* (2003) 112 Cal.App.4th 154, 161.) In June 2007, Vallejo signed a blank Uniform Residential Loan Application as instructed by a loan officer employed by the eventual lender, B.F. Saul. B.F. Saul funded the loan, and Vallejo purchased a home. However, Vallejo later discovered that his income had been "embellished" on the loan application without his knowledge, consent, or permission.[2]

Vallejo alleged that the Chevy Chase respondents failed to disclose to him that the initial monthly loan payments were less than the interest accruing on the loan and that the unpaid interest was being added to principal. They further failed to disclose that, if he made only minimum payments, the loan balance would reach a ceiling of 115 percent of the principal loan amount within two years, forcing him to then begin paying the fully amortized monthly payment of $4,300. Thus, the Chevy Chase respondents knew Vallejo's loan was destined to fail even before they funded the loan. They marketed the loan as a low interest, fixed-rate loan which could be refinanced before the monthly payments increased, but that promise was illusory because of the negative amortization aspect of the loan.

---

[2]    As discussed below, as Vallejo has abandoned his claims based on loan origination fraud, this allegation is not relevant to this opinion.

3

In November 2008, Vallejo began experiencing financial difficulty and contacted the Chevy Chase respondents to inquire about his options. He spoke to Andrea Swenson, a loss mitigation specialist at Chevy Chase Bank, who said she could not help him until he was at least 90 days behind in paying his mortgage. He had made all previous mortgage payments on time. Swenson encouraged Vallejo to stop making his mortgage payments, admitting he had gotten a "bad loan" and that it had to be modified. She said Chevy Chase Bank would not accept mortgage payments once he was in modification review. Vallejo stopped paying his mortgage.

On June 22, 2009, respondents recorded a notice of default and election to sell under the deed of trust, declaring all sums secured by the deed of trust immediately due and payable, and alleging that as of May 2009 Vallejo was required to pay $13,084.19 to cure the default.[3] The notice of default did not notify Vallejo of his right to bring a court action to assert the nonexistence of a default or any other defense to acceleration and sale, as set forth in section 22 of the deed of trust.

In July 2009, when Vallejo complained to Swenson about receiving a notice of default, Swenson reassured Vallejo in an email that recording a notice of default was a normal part of the process, and that the bank would not foreclose on Vallejo's home until all options had been exhausted. Vallejo inquired if he should begin making his mortgage payments but was told he could not make any payment while his loan modification application was being reviewed, so he continued not making payments. In September 2009, Swenson told Vallejo her department was closing and all files, including his, were being transferred to another department in Texas.

---

[3]     Vallejo attached to the third amended complaint a letter dated March 12, 2009, from Chevy Chase Bank informing Vallejo he was in default and was required to pay $15,635 by April 11, 2009, to cure the default. Vallejo did not allege that he did not receive the letter. Rather, he "dispute[d] the content veracity [*sic*] of [the March 12, 2009 letter] including the disparity between the amount[s] in default" stated in the March letter and the June notice of default. He alleged, "The amount mysteriously decreased between the months of March of 2009 and June of 2009."

4

By April 2010 Chevy Chase Bank (and presumably its subsidiaries) had been sold to Capital One. Capital One sent Vallejo a mortgage statement demanding a $4,500 monthly mortgage payment[4] plus all arrearages. Vallejo contacted Capital One and "let them know there was no way he could afford the $4500 per month payment." He informed Capital One he had been working on a loan modification with Chevy Chase Bank. He was told to submit a new loan modification application, either because the initial loan modification package he had submitted to Chevy Chase Bank was outdated or because Capital One had no record of his application. Capital One "reassured [Vallejo] that it [would] not sell the Subject House while his loan modification request [was] still being reviewed." He promptly submitted a new loan modification application.

In May 2010, Vallejo filed for bankruptcy pursuant to chapter 7 of the federal bankruptcy law. Capital One informed him it could not review his loan modification application while he was in bankruptcy, but if he was out of bankruptcy, it would continue to review his application. Vallejo dismissed his bankruptcy action in reliance on that representation. Capital One nonetheless proceeded to sell Vallejo's home in a trustee's sale on September 30, 2010, without Vallejo receiving notice of the final disposition of his loan modification request. Capital One purchased the home for $300,000.

### B.     Causes of Action

In his first cause of action for wrongful foreclosure, Vallejo alleged that the foreclosure should be set aside because respondents encouraged him to default on his loan even though they had no intention of helping him. Thereafter, in reliance on the promise to forbear foreclosure, Vallejo invested $50,000 in home improvements. Respondents promised to forbear foreclosure until they had exhausted all options for loan modification, but had no intention of keeping the promise as they continued to pursue

---

[4]     The amount is sometimes stated to be $4,300 and elsewhere stated to be $4,500.

foreclosure. In addition, Vallejo alleged the loan was procured through systemic fraud and by means of a conspiracy.

Vallejo further alleged that respondents recorded the notice of default in violation of section 22 of the deed of trust by failing to notify Vallejo of his right to bring a court action to assert the nonexistence of a default or any other defense, rendering the notice of default void and invalid. Respondents thus failed to fulfill an express condition precedent of the contract, divesting the trustee of authority to sell the property. Vallejo alleged he was prejudiced by this failure of notice because he could have commenced a lawsuit to challenge his default status.

In his second cause of action for quiet title, Vallejo alleged respondents had no right to sell the property because of the previously stated fraudulent omissions and invalid foreclosure proceedings. Vallejo sought a judicial declaration quieting title in his favor because the notices of default and trustee's sale, and the trustee's sale itself, were void. Vallejo asserted that tender of the amount due was not required because it would be inequitable to require tender under the circumstances alleged.

In his third cause of action for declaratory relief, Vallejo alleged that a current controversy existed and sought a declaration that the foreclosure sale was void or voidable, that the institution of foreclosure proceedings on his home was illegal, and that he had a right to occupy the subject property and was the exclusive owner of all right, title, and interest in the subject property.

In the fourth cause of action for cancellation of the trustee's deed upon sale, Vallejo alleged, pursuant to Civil Code section 3412, that the trustee's deed upon sale was unauthorized and void and should be canceled because if left outstanding, it could cause serious injury to him.

In the fifth cause of action, Vallejo alleged respondents breached the implied covenant of good faith and fair dealing contained in the deed of trust by committing the acts described above.

Vallejo alleged in his sixth cause of action for fraudulent business practices in violation of Business and Professions Code section 17200 et seq. that respondents' acts

6

were likely to deceive the public and did deceive him, and were unlawful, unfair, and fraudulent.

Vallejo prayed for an order cancelling the notice of default and notice of trustee's sale; an order declaring the trustee's sale of the property null and void; an order cancelling the trustee's deed upon sale; an accounting; judgment quieting title in Vallejo; rescission of the loan agreement on the grounds of fraud, mistake, and coercion; compensatory, special, and incidental damages; and an order enjoining respondents from engaging in further acts of unfair competition.

## III.    The Trial Court's Order Sustaining the Demurrer Without Leave to Amend

The trial court sustained the demurrer to the third amended complaint without further leave to amend.

The court addressed three different bases for sustaining the demurrer to the first four causes of action. First, the court found that, to the extent these claims were based on fraud in the loan origination, the claims failed because they were not stated with sufficient specificity. Vallejo failed to identify who made the alleged representations, on behalf of which defendant, and to whom the representations were made. The trial court also found that these claims were preempted by the Home Owners' Loan Act (12 U.S.C. § 1461 et seq.) (HOLA).

Second, to the extent the first four causes of action were based on violation of section 22 of the deed of trust, Vallejo did not attach the documents referenced in the pleading. The court nonetheless reviewed section 22 of a deed of trust filed with a previous complaint and concluded the operative third amended complaint did not allege a violation of that provision.

Third, the trial court noted that the first four causes of action also were based on the claim that Vallejo relied on respondents' representations that foreclosure proceedings would not be undertaken as long as his loan was being considered for modification. The court found, however, that Vallejo had not attached any alleged written agreement to that effect, and in addition Vallejo had not alleged that there was consideration given for such

7

a promise. There also was no allegation of reasonable reliance on the purported promise. Even if adequately alleged, such a theory would give rise only to damages and not to the relief sought, i.e., setting aside the foreclosure sale.

As to the fifth cause of action for breach of the implied covenant of good faith and fair dealing, Vallejo did not allege that he complied with his obligations under the contract or that respondents interfered with any of his rights under the contract. To the extent the cause of action was based on purported failure to provide notice in compliance with the terms of the deed of trust, such would be a breach of an express covenant, not an implied one. To the extent the cause of action was based on allegations of failure to forbear from foreclosure while modification was being reviewed, such an arrangement would appear to contradict the express terms of the deed of trust.

Finally, the court found the sixth cause of action brought pursuant to the unfair competition law failed because it was premised upon the previous claims, none of which properly stated a cause of action.

Accordingly, the trial court entered judgment in favor of respondents. This timely appeal followed.

## DISCUSSION

### I.      Standard of Review

We review independently the trial court's judgment of dismissal following a demurrer, considering de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415; *Aubry v. Tri-City Hospital Dist*. (1992) 2 Cal.4th 962, 967.) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and matters of which judicial notice has been taken. (*Regents of University of California v. Superior Court* (2013) 220 Cal.App.4th 549, 558.) The interpretation of a written contract is a judicial function subject to an independent determination. (*Coopers & Lybrand v. Superior Court* (1989) 212

8

Cal.App.3d 524, 529.) We will affirm the judgment if it is correct on any ground stated in the demurrer, regardless of the trial court's stated reasons. (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1153-1154 (*Gomes*).)

A trial court abuses its discretion by sustaining a demurrer if there is a reasonable probability that the defect can be cured by amendment. The burden rests squarely on the plaintiff to demonstrate how the complaint can be amended to state a valid cause of action. Such a showing can be made for the first time to the reviewing court. (*Gomes*, *supra*, 192 Cal.App.4th at pp. 1153-1154.)

## II.     Vallejo Has Abandoned Any Theory of Liability Based on Fraud in the Loan Origination Process

As the above summary of the allegations in the operative complaint reveal, Vallejo attempted to claim that respondents were guilty of fraud and misrepresentation in marketing the loan to him without revealing its negative amortization or the fact the monthly payments would rise precipitously within a few years. The trial court sustained respondents' demurrer to the first four causes of action based on its conclusion that Vallejo did not allege the fraudulent conduct with sufficient specificity. On appeal, however, Vallejo has abandoned any argument based on fraud in loan origination. We therefore need not discuss those allegations. We also need not discuss whether the claims arising from fraud in loan origination were preempted by HOLA. (12 U.S.C. § 1461 et seq.) Respondents appropriately do not claim that HOLA preempts any other claims.

## III.    No Actionable Breach of the Deed of Trust Has Been Alleged

Vallejo contends on appeal that the trial court erred in sustaining respondents' demurrer without leave to amend because he adequately alleged entitlement to relief based on respondents' breach of an obligation set forth in the deed of trust. Section 22 of the deed of trust stated that notice to Vallejo of a default must include language notifying Vallejo that he had the right to bring a court action to challenge foreclosure proceedings by asserting the nonexistence of default or any other defense. Even though the notice of

9

default did not contain such language, we find no error in the trial court's ruling in this regard.[5]

As did the trial court, we note that Vallejo did not attach to the third amended complaint a copy of the deed of trust. In any event, the record on appeal contains a deed of trust upon which the trial court apparently relied. Section 22 of the deed of trust at issue states in relevant part: "Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. *The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.* If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument

---

[5] Counsel for respondents pointed out for the first time at oral argument that Vallejo attached to his third amended complaint a letter Chevy Chase Bank sent to Vallejo dated March 12, 2009, in which Chevy Chase Bank notified Vallejo of his right to bring a court action. Respondents' counsel argued that this notice satisfied the requirement stated in the deed of trust. According to counsel, the language of the deed of trust did not require that notice of the right to bring a court action be given in the notice of default. Although respondents had made this argument in their demurrer to the third amended complaint, they did not mention it in their respondents' brief.

Vallejo's counsel responded at oral argument that Vallejo alleged in the third amended complaint that he did not receive the March 12, 2009 letter. However, the allegations in the third amended complaint were that Vallejo disputed the content of the letter because the amount required to cure the default was greater than the amount stated in the notice of default three months later. He did not allege that he did not receive the letter. In any event, we need not decide whether the deed of trust required notice of the right to bring a court action to be given in the notice of default itself, or whether Vallejo did or could allege that he did not receive the March 12, 2009 letter. As we explain, even assuming he did not receive notice of his right to bring a court action, his claim for breach of contract fails because he did not adequately allege resulting damage.

10

without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law." (Italics added.)

Our review of the notice of default reveals that it did not inform Vallejo of his right to bring a court action to assert the nonexistence of a default or any other defense to acceleration and sale. However, to establish a cause of action for breach of contract, Vallejo must allege not only a breach, but also resulting damages. In other words, Vallejo must be able to truthfully allege that had he been given notice of his right to do so, he could have brought a court action to assert *either* "the nonexistence of the default" *or* "any other defense to acceleration and sale."

Vallejo has not explained what action he would have brought or why it was viable. We presume, however, that any such action would have been based on respondents' actions alleged in the complaint—encouraging Vallejo to stop paying his mortgage, promising to exhaust loan modification options prior to foreclosing, and rejecting his proffered payment—all of which purportedly excused his nonpayment pending the outcome of the loan modification request. We therefore proceed to consider whether Vallejo's claims based on a defense to the right to accelerate are viable, because only if they are viable would failure of notice of his right to commence an action conceivably have caused him any prejudice.

As we shall explain, we find they are not viable and that Vallejo did not have a potential defense to acceleration and sale upon which to base a lawsuit. Thus, Vallejo was not prejudiced by the failure of the notice of default to advise him of his right to bring a court action, and any cause of action sounding in breach of contract was not adequately stated.

## IV. The Alleged Promise Not to Foreclose Pending Evaluation of Loan Modification Does Not State a Cause of Action

""""The elements of a promissory estoppel claim are '(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the

11

estoppel must be injured by his reliance.'"" (*Advanced Choices, Inc. v. State Dept. of Health Services* (2010) 182 Cal.App.4th 1661, 1672.)" (*Aceves v. U.S. Bank N.A.* (2011) 192 Cal.App.4th 218, 225 (*Aceves*).)

### A. The Alleged Promises

"""[A] promise is an indispensable element of the doctrine of promissory estoppel. The cases are uniform in holding that this doctrine cannot be invoked and must be held inapplicable in the absence of a showing that a promise had been made upon which the complaining party relied to his prejudice . . . ." . . . The promise must, in addition, be "clear and unambiguous in its terms."' (*Garcia v. World Savings, FSB* (2010) 183 Cal.App.4th 1031, 1044, citation omitted.) 'To be enforceable, a promise need only be "'definite enough that a court can determine the scope of the duty[,] and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages.'" . . . It is only where "'a supposed "contract" does not provide a basis for determining what obligations the parties have agreed to, and hence does not make possible a determination of whether those agreed obligations have been breached, [that] there is no contract."' (*Id.* at p. 1045, citation omitted.) '[T]hat a promise is conditional does not render it unenforceable or ambiguous.' (*Ibid.*)" (*Aceves*, *supra*, 192 Cal.App.4th at p. 226.)

Vallejo alleged that in an email dated July 7, 2009, Andrea Swenson, a loss mitigation specialist at Chevy Chase Bank, reassured Vallejo that recording a notice of default was a normal part of the process and that the bank would not foreclose on Vallejo's home until all options had been exhausted. Specifically, in response to Vallejo's email to Swenson indicating he had received a notice of default and asking, "Could you please stop this while the modification is in process?," Swenson replied, in relevant part: "The Green Team has pulled all files and have placed them in 'The War Room' which we do not have access to. . . . As for the Notice of Default, each department has to follow their due diligence and legal actions for whatever step your loan is in. I know it is nerve racking to get these notices, but they have to send them. In the

12

mean time, since you do have a request in to the Loss Mitigation team for a MOD, we will not let your house go to sale until we have exhausted the programs available."

Vallejo further alleged that Swenson informed him in September 2009 that all files were being transferred to a new department in Texas. Seven months later, in April 2010, Vallejo received a mortgage statement from Capital One demanding $4,500 per month plus all arrears. He contacted Capital One, which told him they did not have record of his previous application for modification and instructed him to complete a new application, which he did. "[Capital One] also reassured [Vallejo] that it will not sell the Subject House while his loan modification request is still being reviewed."

After learning that Capital One was proceeding with foreclosure in May 2010, Vallejo filed for bankruptcy pursuant to chapter 7 of the federal bankruptcy law. However, an unidentified person at Capital One informed him that Capital One could not review his loan modification request while he was in bankruptcy. The agent told Vallejo that "once he [wa]s out of bankruptcy, they would continue to review his application." Vallejo alleged he dismissed his bankruptcy action in reliance on that representation. Capital One nonetheless proceeded to sell Vallejo's home in a trustee's sale on September 30, 2010, without having given him notice of the final disposition of his loan modification application.

The promises alleged are: (1) by Swenson, in July 2009, that because Vallejo had applied for loan modification, "we will not let your house go to sale until we have exhausted the programs available"; (2) by an unidentified person at Capital One, in April 2010, that Capital One "will not sell the Subject House while his loan modification request is still being reviewed"; and (3) by another unidentified person at Capitol One, at an unspecified time between May and September 2010, that "once he [wa]s out of bankruptcy, they would continue to review his application."

Even assuming these alleged promises were clear and unambiguous, Vallejo did not allege that the promises were not kept. Vallejo did not affirmatively allege that respondents had *not* "exhausted the programs available" for loan modification or that

they did *not* "continue to review his application" after he dismissed his bankruptcy case.[6] He instead alleged that he was not given notice that his application for loan modification had been denied before respondents sold his home at a trustee's sale. However, he did not allege that respondents promised to notify him if his application was denied or that they would not foreclose until he received notification. Inherent in Swenson's promise was an acknowledgement that foreclosure proceedings had been initiated and could come to fruition if modification options were exhausted without a successful outcome. Vallejo did not allege that his application was not in fact denied.

Based on the facts stated in the operative complaint, we conclude that Vallejo did not adequately allege that respondents actually breached a clear and unambiguous promise made to him. In any event, even if he had so alleged, the complaint suffers from a more critical failure: It does not adequately allege that Vallejo reasonably relied on the promises in a manner that resulted in specified detriment to him. We proceed then to discuss the allegations regarding reliance.

### B.      *Reasonable Reliance and Detriment*

Vallejo contends that he reasonably and foreseeably relied to his detriment on respondents' promises to exhaust all options for loan modification before foreclosing. We will discuss in turn each of Vallejo's allegations of detrimental reliance.

### 1.      Dismissal of Bankruptcy Proceedings

In *Aceves*, *supra*, 192 Cal.App.4th 218, on which Vallejo relies for the first time on appeal, plaintiff homeowner obtained an adjustable rate home loan from the predecessor to defendant U.S. Bank. Two years later, plaintiff could not afford the mortgage payments, and U.S. Bank recorded a notice of default and election to sell under the deed of trust. Plaintiff then filed for bankruptcy protection under chapter 7 of the

---

**6**      More than one year passed between the making of the first promise and the foreclosure sale. The timing of the foreclosure sale in relation to the second promise is not made clear in the complaint.

14

Bankruptcy Code (11 U.S.C. §§ 701-784), resulting in a stay of the foreclosure proceedings. Plaintiff contacted U.S. Bank and was told that once her loan was out of bankruptcy, the bank would work with her on a mortgage reinstatement and loan modification. She submitted documents to the bank for its consideration.

Plaintiff alleged that she had intended to convert her chapter 7 bankruptcy case to a chapter 13 case (11 U.S.C. §§ 1301-1330) and to receive financial assistance from her husband to save her home under the provisions of chapter 13. (*Aceves*, *supra*, 192 Cal.App.4th at pp. 222-223.) The bank filed a motion in the bankruptcy court to lift the stay so it could proceed with nonjudicial foreclosure. In reliance on the bank's promise to work with her to reinstate and modify the loan, plaintiff did not oppose the motion to lift the stay and did not seek relief under chapter 13 of the bankruptcy law. The bankruptcy court lifted the stay, and five days later the bank scheduled plaintiff's home for public auction without contacting plaintiff to discuss reinstatement and modification.

Prior to the auction, plaintiff had provided documents to the bank's loan servicer and was later told by a negotiator from the loan servicer that the loan servicer had mistakenly decided not to offer plaintiff any assistance because they incorrectly thought plaintiff's loan had been discharged in bankruptcy. The negotiator said the loan servicer would reconsider a loss mitigation proposal. The day before the auction the loan servicer informed plaintiff's bankruptcy counsel that the new balance on the loan was about $966,000 (the original loan was for $845,000), the new monthly payment would be more than $7,200 (as opposed to the $4,857 she paid previously), and a $6,500 deposit was immediately due. The negotiator refused to commit any of these terms to writing, and plaintiff did not accept the offer. (*Aceves*, *supra*, 192 Cal.App.4th at pp. 222, 223-224.) The following day, plaintiff's home was sold at a trustee's sale to U.S. Bank.

The trial court sustained the bank's demurrer to plaintiff's operative complaint without leave to amend. The appellate court concluded, however, that plaintiff had adequately pleaded a claim for promissory estoppel.

The appellate court noted that "U.S. Bank agreed to 'work with [Aceves] on a mortgage reinstatement and loan modification' if she no longer pursued relief in the

15

bankruptcy court. This is a clear and unambiguous promise. It indicates that U.S. Bank would not foreclose on Aceves's home without first engaging in negotiations with her to reinstate and modify the loan on mutually agreeable terms." (*Aceves*, *supra*, 192 Cal.App.4th at p. 226.)

The court continued: "U.S. Bank assert[ed] that it *offered* Aceves a loan modification, referring to the offer it made the day before the auction. That assertion, however, is of no avail. Aceves's promissory estoppel claim is not based on a promise to make a *unilateral offer* but on a promise to *negotiate* in an attempt to reach a mutually agreeable loan modification. And, even assuming this case involved a mere promise to make a unilateral offer, we cannot say the bank's offer satisfied such a promise in light of the offer's terms and the circumstances under which it was made. [¶] . . . [¶] Aceves relied on U.S. Bank's promise by declining to convert her chapter 7 bankruptcy proceeding to a chapter 13 proceeding, by not relying on her husband's financial assistance in developing a chapter 13 plan, and by not opposing U.S. Bank's motion to lift the bankruptcy stay." (*Aceves*, *supra*, 192 Cal.App.4th at p. 227.)

We disagree with Vallejo's assertion that the holding in *Aceves* is controlling and that *Aceves* is "exactly Appellant's case." Several critical distinctions exist. Unlike Aceves, Vallejo did not allege that he had intended to convert his chapter 7 bankruptcy case to a chapter 13 proceeding. As explained in *Aceves*, the distinction is important. "In general, chapter 7, entitled 'Liquidation,' permits a debtor to discharge unpaid debts, but a debtor who discharges an unpaid home loan cannot keep the home; chapter 13, entitled 'Adjustment of Debts of an Individual with Regular Income,' allows a homeowner in default to reinstate the original loan payments, pay the arrearages over time, avoid foreclosure, and retain the home. (See 1 Collier on Bankruptcy (16th ed. 2010) ¶¶ 1.07[1][a] to 1.07[1][g], 1.07[5][a] to 1.07[5][e], pp. 1-25 to 1-30, 1-43 to 1-45.)" (*Aceves*, *supra*, 192 Cal.App.4th at p. 223.) "[C]hapter 13 is '"uniquely tailored to protect homeowners' primary residences [from foreclosure]."' [Citation.]" (*Id.* at p. 222.) Even so, as the court observed, a bankruptcy court proceeding under chapter 13 could have reinstated Aceves's loan (permitting her to cure the default, pay arrearages,

16

and resume regular loan payments), but it could not have modified the terms of the loan by reducing the regular monthly payments or extending the loan repayment period. (*Id.* at p. 227.)

In contrast, Vallejo did not allege that he intended to convert to chapter 13 proceedings to save his home. More important, he did not allege that he had the means to pay the existing mortgage without loan modification, as would be the case if he sought relief via chapter 13 bankruptcy. He alleged instead that beginning in 2008 he "began to experience[] financial constraint" and "suffered some financial setbacks." He flatly stated that "*there was no way* he could afford the $4500 per month payment." (Italics added.) He further alleged that respondents knew Vallejo's loan was "destined to fail . . . even before they funded the loan," and that he intended to refinance but was unable to do so because of the negative amortization aspect of the loan.

Vallejo did not allege that he had any other means to pay the existing mortgage.[7] As such, Vallejo has failed to allege that he suffered detriment by relying on Capital One's promise that "once he [wa]s out of bankruptcy, they would continue to review his application." He has made clear that he did not have the financial means to pay the existing mortgage payments of $4,500 that, under the best case scenario, would have been the result of saving his home through chapter 13 bankruptcy proceedings. His allegations also necessarily lead to the conclusion that he could not have simply continued to pay the mortgage without modification, because the monthly payments soon would have risen to $4,500, which he could not afford to pay.[8]

---

[7]    Vallejo alludes in his opening brief to the possibility that he could have used 401K money to "save his home," but he has not offered to amend his complaint to allege that as a fact. Indeed, such an allegation would directly contradict the existing allegation that "*there was no way* he could afford" a monthly payment of $4,500. (Italics added.)

[8]    Vallejo contends that *Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182 (*Ragland*) is "controlling" and supports his assertion that "there [is] a triable issue of fact whether [Vallejo] was in default when he spoke with Andrea Swenson" and she encouraged him to stop making payments. Other than the similarity that the plaintiff in *Ragland* was told by a bank employee to stop making her loan

17

## 2. $50,000 Investment in Home Improvements

In his first cause of action for wrongful foreclosure, Vallejo alleged that the foreclosure should be set aside because defendants encouraged him to default on his loan even though they had no intention of helping him. In reliance on the promise to forbear foreclosure, Vallejo invested $50,000 in home improvements.

In his brief on appeal, Vallejo makes only passing reference to this allegation, and cites no authority to support the assertion that his investing money in home improvements constituted reasonable reliance on respondents' promise that "we will not let your house go to sale until we have exhausted the programs available."[9] At all relevant times Vallejo remained obligated to make payments under the terms of the note and deed of trust. When Vallejo defaulted, respondents did not accept payments from him while his application for loan modification was under review, but at no time did respondents guarantee Vallejo that his home would not be sold at foreclosure. Money he

payments in order to be considered for loan modification, this case is entirely distinguishable. In *Ragland*, there were no allegations that the plaintiff could not afford to make the monthly loan payments. In fact, in opposition to the bank's summary judgment motion, plaintiff Ragland presented evidence that she could have made all past due loan payments but could not pay the added fees and penalties that were incurred solely as a result of the bank's actions. In contrast, in this case Vallejo affirmatively alleged he could not afford to continue to make the loan payments. In addition, *Ragland* involved allegations of forgery of loan documents, improper imposition of fees and interest, and violations of statutes governing nonjudicial foreclosure sales—elements not present here. In short, the holdings in *Ragland* have no relevance to the present case, and factual dissimilarities abound.

[9] "'Where a point is merely asserted by counsel without any argument of or authority for its proposition, it is deemed to be without foundation and requires no discussion.'" (*Fraley v. Allstate Ins. Co.* (2000) 81 Cal.App.4th 1282, 1291; see 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 701, p. 769.) "'"When an issue is unsupported by pertinent or cognizable legal argument it may be deemed abandoned and discussion by the reviewing court is unnecessary."'" (*In re Marriage of Mosley* (2008) 165 Cal.App.4th 1375, 1392-1393, quoting *Estate of Bibb* (2001) 87 Cal.App.4th 461, 470.) "A 'passing reference' in a brief does not suffice to establish a legal argument." (*Kunec v. Brea Redevelopment Agency* (1997) 55 Cal.App.4th 511, 526, fn. 9.)

18

invested in home improvements during the time he was not required to pay monthly mortgage payments must be considered to have been expended at his own risk.

### C. Damages Awardable for Promissory Estoppel

We note that even if Vallejo had stated a valid cause of action based on a theory of promissory estoppel, he would not be entitled to the remedy he seeks of invalidating the foreclosure sale. "[A] promissory estoppel claim generally entitles a plaintiff to the damages available on a breach of contract claim. (See *Toscano v. Greene Music* (2004) 124 Cal.App.4th 685, 692-693.) Because this is not a case where the homeowner paid the funds needed to reinstate the loan before the foreclosure, promissory estoppel does not provide a basis for voiding the deed of sale or otherwise invalidating the foreclosure. (See *Garcia v. World Savings, FSB*, *supra*, 183 Cal.App.4th at p. 1047, distinguishing *Bank of America v. La Jolla Group II* (2005) 129 Cal.App.4th 706, 711-714.)" (*Aceves*, *supra*, 192 Cal.App.4th at p. 231.) In *Bank of America v. La Jolla Group II*, the court recognized that the tender and acceptance of a payment sufficient to cure a default on a loan secured by a deed of trust reinstates the loan and deprives the trustee of the power to foreclose. (*Bank of America v. La Jolla Group II*, *supra*, at p. 711, citing *Bisno v. Sax* (1959) 175 Cal.App.2d 714, 718.) As we next discuss, that did not occur here. In order to succeed in stating a cause of action for wrongful foreclosure or similar actions seeking to set aside a trustee's deed of sale, Vallejo was required to allege tender of payment sufficient to cure the default. Vallejo has not done so, and further fails to persuade us that the facts he alleged support an equitable exception to the tender rule.

### V. Claims Seeking to Invalidate the Foreclosure Sale Are Barred by Failure to Allege Tender

Respondents contend on appeal, as they did in their demurrer, that none of Vallejo's claims to set aside the trustee's sale can be maintained because Vallejo does not allege that he tendered the full amount owed to cure the default prior to the foreclosure sale. Here, the first four causes of action—wrongful foreclosure, quiet title (based on

respondents' lack of authority to foreclose), declaratory relief, and cancellation of the trustee's deed upon sale—are based on Vallejo's claim that the foreclosure was improper. Vallejo counters that the tender requirement does not apply because Capital One's credit bid was invalid. He also contends that the tender rule should not be applied because it would be inequitable under the facts alleged. We disagree as to both contentions. We find that the tender rule applies and that the facts alleged do not support an equitable exception to the tender rule.

"After a nonjudicial foreclosure sale has been completed, the traditional method by which the sale is challenged is a suit in equity to set aside the trustee's sale. [Citation.] Generally, a challenge to the validity of a trustee's sale is an attempt to have the sale set aside and to have the title restored. [Citations.]" (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 103 (*Lona*).)

"[T]he elements of an equitable cause of action to set aside a foreclosure sale are: (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering. [Citations.]" (*Lona*, *supra*, 202 Cal.App.4th at p. 104.)

Vallejo does not dispute respondents' argument that the complaint failed to allege tender. However, he argues that tender was not required because Capital One was not a bona fide purchaser for money, instead purchasing the home by way of a credit bid at the trustee's sale. According to Vallejo, Capital One was not the beneficiary at the time of the foreclosure sale, so its credit bid violated Civil Code section 2924h, subdivision (b). Vallejo does not quote or even paraphrase the statute upon which he relies, but the apparently relevant portion states: "The present beneficiary of the deed of trust under foreclosure shall have the right to offset his or her bid or bids only to the extent of the total amount due the beneficiary including the trustee's fees and expenses." (Civ. Code, § 2924h, subd. (b).)

As respondents point out, Vallejo did not allege in his complaint that Capital One was not the beneficiary. Indeed, he alleged to the contrary. Specifically, Vallejo alleged that as a result of the merger between the Chevy Chase respondents and Capital One, respondent MERS assigned the deed of trust and promissory note to Capital One. He also generally alleged that respondents, collectively, were "the beneficiary [*sic*] and also the servicers" of the note secured by the deed of trust.

In any event, Vallejo has no standing to challenge respondents' authority to foreclose on the property. As explained in *Gomes*, *supra*, 192 Cal.App.4th at page 1154, "Civil Code sections 2924 through 2924k, . . . 'provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust.' (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830 . . . .) 'These provisions cover every aspect of exercise of the power of sale contained in a deed of trust.' (*I.E. Associates v. Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 285.) . . . [¶] By asserting a right to bring a court action to determine whether the owner of the Note has authorized its nominee to initiate the foreclosure process, [plaintiff] is attempting to interject the courts into this comprehensive nonjudicial scheme. As Defendants correctly point out, [plaintiff] has identified no legal authority for such a lawsuit. Nothing in the statutory provisions establishing the nonjudicial foreclosure process suggests that such a judicial proceeding is permitted or contemplated." (*Gomes*, *supra*, at p. 1154.)

In *Gomes*, *supra*, 192 Cal.App.4th 1149, plaintiff set forth purported legal authority to support his first cause of action, "alleging that Civil Code section 2924, subdivision (a), by 'necessary implication,' allows for an action to test whether the person initiating the foreclosure has the authority to do so." (*Id.* at p. 1155.) The appellate court rejected the argument, concluding that "nowhere does the statute provide for a judicial action to determine whether the person initiating the foreclosure process is indeed authorized, and we see no ground for implying such an action. [Citation.]" (*Ibid.*) We similarly conclude that Vallejo does not have standing to challenge Capital One's status as the beneficiary, the legality of its credit bid, and the ensuing validity of the sale. Vallejo cannot escape application of the tender rule on this basis.

21

We briefly note that Vallejo's allegation that he has a right of action for cancellation of the trustee's deed upon sale pursuant to Civil Code section 3412 fares no better. That section provides that "[a] written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled." Vallejo contends that he can plead in good faith that Capital One was not the beneficiary at the time of the trustee's sale and had no right to purchase the home through credit bid. Nothing in Civil Code section 3412 gives Vallejo standing to challenge Capital One's status as the beneficiary or the validity of its credit bid. We see no ground for implying such an action based on Civil Code section 3412 and thereby infringe upon the comprehensive statutory scheme governing nonjudicial foreclosure.

Finally, Vallejo also suggests that an exception to the tender rule applies. It is true that "a tender may not be required where it would be inequitable to impose such a condition on the party challenging the sale." (*Lona*, *supra*, 202 Cal.App.4th at p. 113.) Vallejo contends that this exception applies because respondents encouraged him to default in the first place, he awaited the loan modification decision that respondents promised to make, and respondents refused his offer to make payments. These reasons do not support our making an equitable exception to the tender rule. This case is readily distinguishable from others in which the equitable exception has been applied. (See, e.g., cases cited in *Lona*, *supra*, 202 Cal.App.4th at p. 113: *Humboldt Sav. Bank v. McCleverty* (1911) 161 Cal. 285, 291 [court held it would be inequitable to require defendant to pay, or offer to pay, a debt for which she is in no way liable to attack the sale of her homestead]. See also *Onofrio v. Rice* (1997) 55 Cal.App.4th 413, 418-420 [plaintiff homeowner in foreclosure approached by defendant real estate broker specializing in foreclosure properties, who loaned plaintiff money in exchange for promissory note and deed of trust and subsequently bought house at foreclosure sale; defendant's conduct violated statutory scheme designed to protect homeowners from unscrupulous foreclosure consultants; court found tender requirement inequitable under

22

circumstances, and noted that if action attacks the validity of underlying debt, tender is not required].)

This case does not present a situation in which the party seeking to have the sale set aside was not even liable for the debt, and there are no allegations here that respondents violated a statutory scheme. The allegations that respondents breached section 22 of the deed of trust and allegations of promissory estoppel are inadequate and ineffectual to invalidate the foreclosure sale. In addition, Vallejo has abandoned the allegations that the underlying debt is invalid based on fraud in loan origination. Thus, we conclude that Vallejo failed to allege tender or to allege circumstances to support an exception to application of the tender rule. We conclude the trial court properly sustained respondents' demurrer to the four causes of action seeking to set aside the trustee's sale—wrongful foreclosure, quiet title, declaratory relief, and voiding or cancellation of the trustee's deed upon sale.

## VI.    Implied Covenant of Good Faith and Fair Dealing

Vallejo contends that respondents breached the implied covenant of good faith and fair dealing implied in the deed of trust by encouraging him to commit a strategic default and failing to provide proper notice that he could sue to challenge the notice of default. The trial court rejected these contentions, finding that a promise to forbear from foreclosure while modification was being reviewed contradicted the express terms of the deed of trust. The court also concluded that the allegation regarding respondents' failure to provide notice of the right to bring a court action constituted breach of an express term of the contract, not an implied term. We agree with the trial court.

"Every contract imposes on each party a duty of good faith and fair dealing in contract performance and enforcement such that neither party may do anything to deprive the other party of the benefits of the contract. [Citations.] '"This covenant not only imposes upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own, but also the duty to do everything that the contract presupposes that he will do to accomplish its

23

purpose.'" (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 798, p. 892.) [¶] "'The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith.' [Citation.]" (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 76.)

Vallejo implicitly acknowledges that a promise to forbear from foreclosure while modification was being reviewed contradicted the express terms of the deed of trust.[10] He argues, however, that a condition may be waived where a party binds itself to perform unconditionally. As we have discussed above, Vallejo has not adequately alleged facts that respondents bound themselves to do anything other than consider his loan modification application, and he did not allege that they failed to do that. We reject Vallejo's assertion that he has adequately pleaded a cause of action for breach of an implied covenant on this basis.

We also reject Vallejo's contention that his allegation that respondents failed to include in the notice of default notice of his right to bring a court action constituted breach of an implied covenant. The allegation is indeed one regarding breach of an express term of the deed of trust. Furthermore, as we discussed above, we conclude Vallejo suffered no detriment as a result of the failure of notice. We therefore conclude that the trial court appropriately sustained without leave to amend Vallejo's fifth cause of action for breach of the implied covenant of good faith and fair dealing.

---

[10] Section 12 of the deed of trust stated: "Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower . . . shall not operate to release the liability of Borrower . . . . Lender shall not be required to . . . modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments . . . in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy."

24

**VII. Violation of Business and Professions Code Section 17200 et seq.**

In his sixth cause of action, Vallejo alleged that respondents were liable under Business and Professions Code section 17200 et seq., the unfair competition law (UCL). Respondents contend Vallejo failed to adequately allege that respondents engaged in any unlawful, unfair, or fraudulent practices. We agree.

By defining "unfair competition" to include any unlawful act or practice, the UCL permits violations of other laws to be treated as independently actionable as unfair competition. (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180.) As Vallejo implicitly concedes, if all of his other causes of action fail to survive demurrer, his cause of action under the UCL fails as well. As we have concluded that the trial court properly sustained without leave to amend the remainder of Vallejo's causes of action, we further conclude that the trial court properly sustained respondents' demurrer to Vallejo's claim pursuant to the UCL.

**DISPOSITION**

The judgment is affirmed. Respondents are entitled to costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, J.[*]

We concur:

WILLHITE, Acting P. J.          MANELLA, J.

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

25